IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

WALTER E. REYES,                           )    CASE NO. 5:16CV01181
                                           )
                    Petitioner,            )    JUDGE JOHN R. ADAMS
                                           )
             v.                            )    MAGISTRATE JUDGE
                                           )    JONATHAN D. GREENBERG
WARDEN, MADISION CORRECTIONAL              )
INSTITUTION,                               )
                                           )
                                           )    **REPORT AND**
                                           )    **RECOMMENDATION**
                    Respondent.

　　　　This matter has been referred to the undersigned United States Magistrate Judge for

preparation of a Report and Recommendation pursuant to Local Rule 72.2(b)(2).  Before the

Court is Petitioner Walter E. Reyes's Petition for the Writ of Habeas Corpus.  (Doc No. 1).  Also

pending is Petitioner's motion for summary judgment (Doc No. 23) and a motion for entry of

default. (Doc. No. 27).  For the reasons that follow, it is recommended that Petitioner's petition

be DENIED, Petitioner's motion for summary judgment be DENIED, and his motion for entry of

default be DENIED.

## I. Background

### A. State Court Conviction

　　　　On October 9, 2009, a Portage County grand jury indicted Petitioner with on count of

unlawful sexual conduct with a minor victim less than sixteen years old.  (Doc. 14-1 (hereinafter

"R.") at 8).  On November 13, 2009, a supplemental indictment was issued charging Petitioner

with six counts of rape of a victim less than thirteen years old; and five counts of unlawful sexual conduct with a minor victim less than sixteen years old.  (R. 10-22).  On November 10, 2009, Petitioner appeared and entered a plea of not guilty to all charges.  (R. 23).

On June 2, 2010, Petitioner executed a waiver of his right to jury trial.  (R. 24).  He entered a plea of guilty to four counts of rape (counts 2, 4, 5, and 6) in case number 2009 CR 623 and one count of violation of a protection order (count 1) in case number 2009 CR 542.  (R. 25). The court entered judgment accepting Petitioner's plea and dismissing the remaining charges. (R. 27).

On July 6, 2010, Petitioner was sentenced to ten years incarceration for each of three counts of rape to be served consecutively and ten years incarceration for last count of rape and the count of violation of a protection order, to be served concurrently with one another and the other counts for an aggregate sentence of thirty years.  (R. 29).  Petitioner was adjudicated a Tier III Sex Offender.  (R. 29).

Petitioner did not file a timely appeal of his conviction or sentence.  On May 14, 2012, Petitioner filed a motion for discovery, seeking transcripts of the change of plea and sentencing hearings.  (R. 32).

**B. Delayed Appeal**

On February 13, 2013, Petitioner filed a notice of appeal (R. 33) and a motion for leave to file delayed appeal.  (R. 54).  Petitioner explained why he did not file a timely appeal, asserting that because he had "waive[d] [his] rights to appeal any issue that may have been brought up at trial," he believed he had no recourse.  (R. 57).  Petitioner further pointed out that he had been seeking legal counsel but without success.  (R. 57).  On April 15, 2013, the court

2

issued an order denying petitioner's motion for leave to file a delayed appeal.  (R. 67-69).  The court pointed out that Petitioner's notice of appeal was filed about two and a half years late. Given the length of time that had passed, the court reasoned that Petitioner had not been diligent in taking the proper steps to protect his rights.  (R. 69).

On April 26, 2013, Petitioner filed a motion for reconsideration in the trial court on the ground that his trial counsel had been ineffective.  (R. 71).  The motion was never addressed by the court.

### C. Second Notice of Appeal and Second Motion for Leave

On July 9, 2013, Petitioner filed a second notice of appeal in the trial court (R. 87) and another motion for leave to file delayed appeal of his sentence in the court of appeals.  (R. 99). Petitioner argued that the trial court erred by imposing consecutive sentences without making findings pursuant to R.C. § 2929.14(E)(4).  He again explained that his appeal was untimely because he did not understand what it meant that he had waived his right to appeal any issue that may have arisen at trial.  (R. 100-101).

In his brief, Petitioner raised two assignments of error :

1.    The trial court's sentence is contrary to law in that it totally failed to apply factors for recidivism mandated by O.R.C. 2929.12(D);

2.    The trial court erred by imposing maximum consecutive sentences herein.

(R. 103-118).

On September 23, 2013, the court of appeals *sua sponte* overruled the motion for delayed appeal and dismissed the appeal, as it was duplicative of his prior appeal.  (R. 124).

On October 8, 2013, Petitioner filed a supplemental brief in support of resentencing and a motion for reconsideration with the court of appeals.  (R. 125, 134).  On January 30, 2014, the

3

court of appeals, finding no error in its previous decision, overruled Petitioner's motion for reconsideration.  (R. 144-145).  Petitioner did not file an appeal with the Ohio Supreme Court.

### D. Motions to Withdraw Plea

On April 8, 2013, Petitioner filed a "Statement of Evidence" in the trial court.  (R. 146).  Attached to this submission were a number of documents, including a letter from the Portage County prosecutor to Petitioner's prior counsel offering a twenty year sentence in exchange for a guilty plea.  (R. 154).

On April 23, 2013, Petitioner filed a motion to set aside the judgment of conviction and to withdraw his plea of guilty.  (R. 155).  Petitioner presented the following claims:

1.  The trial court abused its discretion in declining to honor the plea agreement between the State and [Petitioner];

2.  The State of Ohio failed to keep a promise concerning sentencing;

3.  [Petitioner's] due process rights were violated by his plea to "rape" 2907.02(A)(1)(b) charge, which is not a lesser included offense of "rape" 2907.02(A)(1)(b) & (2).

4.  The trial court erred in sentencing [Petitioner] to more than the minimum sentence on each count, in sentencing [Petitioner] to the maximum sentence on each count, pursuant to felony sentencing statutes, R.C. 2953.08(A)(1).

(R. 157-60).  On May 6, 2013, the trial court entered an order denying Petitioner's motion.  (R. 181).

On May 8, 2013, Petitioner filed a second motion to set aside judgment of conviction and to withdraw plea of guilty, arguing ineffective assistance of counsel.  (R. 182-85).  On May 20, 2013, while the second motion was pending, Petitioner appealed the May 6, 2013 judgment and requested court-appointed counsel.  (R. 210).  On June 12, 2013, an attorney was appointed.  (R. 218).  On September 17, 2013, Petitioner, through counsel, filed an amended appeal.  (R. 237).

4

Petitioner raised a single assignment of error: "the Trial Court committed reversible error and plain error in denying without holding a hearing [Petitioner's] motion to withdraw guilty plea." (R. 241).  The state filed a brief in opposition.  (R. 253).

On April 21, 2014, the court of appeals affirmed the trial court's judgment.  (R. 261). The court did not review Petitioner's claim of ineffective assistance of counsel raised in the second motion to withdraw because it was still pending in the trial court.  (R. 263-64).  Later, on July 31, 2014, the trial court denied the second motion.  (R. 198).  Petitioner appealed that judgment on August 25, 2014 (R. 199), but his appeal was dismissed on February 18, 2015 for failure to prosecute.  (R. 209).

On May 9, 2014, Petitioner filed a notice of appeal as to the first judgment with the Ohio Supreme Court, raising three propositions of law:

1.    The trial court committed reversible error and plain error in denying without a hearing appellant's motion to withdraw his guilty plea;

2.    Ineffective assistance of appellate counsel for failing to compile App.R.9(c) statement and ineffective for waiving oral argument;

3.    Ineffective assistance of appellate counsel for failing to raise the issue that the prosecuting attorney did not furnish a bill of particulars upon request pursuant Crim. R. 7(E).

(R. 271-77).  The state responded in opposition.  (R. 286-298).  On July 23, 2014, the Supreme Court declined jurisdiction.  (R. 299).

**E. Application to reopen appeal**

On July 14, 2014, Petitioner proceeding *pro se* filed an application to reopen his appeal pursuant to Ohio App. R. 26(B).  (R. 300).  He raised the following assignments of error:

1.    Appellate counsel's performance was deficient for failing to raise the issue that the trial counsel was deficient for failing to compel the prosecution to furnish a

5

bill of particulars because the indictments violated his constitutional right to due process of law and violated his protection against double jeopardy.

2.    Appellant's counsel's performance was deficient for not arguing that the trial court did not consider the Peterseim/Maney factors when it decided the motion.

3.    Appellant's counsel's performance was deficient because he failed to argue that the trial court erred in sentencing defendant to more than the minimum and to the maximum on each count.

(R. 300-305).  Petitioner added a fourth assignment of error in a supplemental application:

4.    Appellant's counsel's performance was deficient for failing to raise the issue that the trial court erred when it failed to permit appellant and his counsel an opportunity to review and comment on upon the pre-sentence report that it considered when sentencing the appellant, and such error is a violation of R.C. 2951.03(B), an abuse of discretion, rendering the sentence a nullity and void.

(R. 314).

By December 1, 2014, the state had not responded and Petitioner filed a motion for summary judgment on his motion to reopen appeal.  (R. 320).  On February 13, 2015, the court denied Petitioner's motion to reopen appeal because Ohio App. R. 26(B)(1) applies to the reopening of the appeal from the judgment of conviction and sentence, not from a judgment on a post-conviction motion, such as a motion to withdraw guilty plea.  (R. 323-24).  Petitioner did not appeal to the Ohio Supreme Court.

**F. Motion to Vacate or Set Aside Judgment of Conviction or Sentence**

On February 5, 2015, Petitioner filed a petition to vacate or set aside judgment of conviction or sentence, asserting the following claims:

1.    Petitioner was denied his due process right to appeal and the effective assistance of counsel on appeal of right.

Petitioner was sentenced on July 6, 2010, the order and journal entry reveals the trial court did not advise Petitioner of any of his rights pursuant to Crim.R. 32(B) which states "a defendant must be told of his right to appeal, apprised of

6

procedures and time limits involved in proceeding with that appeal, and the right to have assistance of appointed counsel for that appeal." Crim.R. 32(B) has three mandates (A) Imposition of sentence, (B) Notification of right to appeal and, (C) Judgment. From the face of the record, Petitioner' notification of right to appeal is void.

2.   Petitioner was denied his due process right to appeal and the effective assistance of counsel on appeal of right.

Trial counsel did not inform Petitioner of his right to appeal pursuant to Crim.R. 32(B), after Petitioner was sentenced.

(R. 325).  On February 9, 2015, the court denied the petition. (R. 337).

On February 18, 2015, Petitioner appealed.  (R. 338).  He raised the following

assignment of error:

1.   The trial court abused its discretion in denying the petition to vacate or set aside judgment of conviction or sentence without a hearing.

(R. 357).  The State filed a brief in response.  (R. 369). Petitioner replied.  (R. 378). On

December 22, 2015, the Court of Appeals affirmed the judgment of the trial court. (R. 384).

On January 14, 2016, Reyes appealed to the Ohio Supreme Court, setting forth the

following propositions of law:

1.  The Court of Appeals erred in finding his petition untimely pursuant to R.C. 2953.21 and R.C. 2953.23.

2. The Court of Appeals erred in denying his post-conviction petition appeal to correct an error in the pre-appellate process that had the same effects as if the trial court had not appointed appellate counsel.

3. Appellant acted with due diligence by trying to obtain the sentencing transcripts from the court reporter.

(R. 393).  On April 20, 2016, the Ohio Supreme Court declined to accept jurisdiction of the

appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (R. 420).

7

On February 25, 2016, Reyes filed a motion for leave to file a delayed motion to certify a conflict pursuant to App.R. 25.  (R. 421).  On March 11, 2016, the appellate court denied the motion as untimely, noting further that App.R. 25 does not allow for a delayed motion to certify. (R. 425).

### G. Third Motion for Delayed Appeal

On March 25, 2015, Petitioner filed his third motion for leave to file a delayed appeal of his July 2010 sentence in the court of appeals.  (R. 429).  Petitioner claimed his filing was delayed because he did not know he could appeal and he was prevented from diligently pursuing his case as the sentencing transcripts were never available.  He attached the transcripts that were received March 10, 2015, to demonstrate that he was not notified by the court of rights pursuant to Crim.R. 32(B)(2)(3).  *Id.*  He also claimed that the sentencing transcripts revealed additional court failures regarding his sentence. *Id.*

On May 11, 2015, the court of appeals concluded that Petitioner's motion was duplicative of the two prior cases which the court had already overruled.  (R. 437).  The court overruled Petitioner's motion and dismissed the case.  *Id.*  Petitioner did not appeal to the Ohio Supreme Court.

### H. Third Motion to Withdraw Plea

On January 25, 2016, Petitioner filed his third motion to set aside judgment of conviction and to withdraw guilty plea to correct manifest injustice.  (R. 438).  Petitioner argued that the trial court did not comply with Crim.R.11(C)(2)(a) when it failed to advise him that he was subject to mandatory prison sentences; and that he did not understand that by entering plea, the

8

trial court could not impose probation or community control.  *Id.*  On January 25, 2016, the court

denied the motion. (Exhibit 65).

On February 8, 2016, Petitioner appealed, raising two assignments of error:

1. The trial court erred when it failed to hold a hearing and explain its reasoning when it denied the post-sentence motion to withdraw pleas, Crim.R. 32, without a hearing, when the error is apparent on the face of the record.

2. The trial court failed to comply with Criminal Rule 11(C)(2)(a).

(R. 471).  The State filed a brief in opposition.  (R. 487).  On September 6, 2016, the court of

appeals affirmed the judgment of the trial court, having concluded that Petitioner's arguments

were barred by *res judicata*, since he could have raised these arguments on appeal.  (R. 496).

Reyes has not appealed to the Ohio Supreme Court.

### I. Motion for Access to Pre-Sentence Investigation Report

On March 25, 2016, Petitioner filed a motion for an order requiring the Ravenna Adult

Probation Department to provide him with access to the Pre-Sentence Investigation Report that

was prepared for this case.  (R. 503).  On March 29, 2016, the court denied the motion.  (R. 506).

On April 14, 2016, Petitioner filed two notices of appeal with the Eleventh District Court

of Appeals.  (R. 507, 515). The appeals were consolidated, and on August 15, 2016, the court of

appeals dismissed them for failure to prosecute. (R. 523).

//

//

//

//

//

9

### J.  Procedural History in this Court

On May 10, 2016, Petitioner filed for habeas relief under 28 U.S.C. § 2254.[1]  (Doc. No.
1).  He alleges the following grounds in support of the petition:

> **GROUND ONE:** The trial court abused its discretion in denying the Petition to vacate or
> set aside judgment of conviction or sentence without a hearing.
>
> **Supporting Facts:** At the 7/6/2010 sentencing hearing, the trial court violated
> Petitioner's Constitutional due process and equal protection of the law when the it [sic]
> did not advised [sic] Petitioner of his rights to appeal and his right to have court
> appointed counsel to represent him on direct appeal. For these reasons, Petitioner did not
> file a direct appeal. After sentencing petitioner was indigent; petitioner was not aware he
> had a right to appeal. Petitioner was prejudiced because he missed the time limit to file a
> direct appeal, Ohio App.R.4(A). Petitioner stands convicted with a maximum consecutive
> prison term of 30 years and his conviction and sentence has not been reviewed by any
> Ohio Court. Petitioner has never seen his pre-sentence investigation report.
>
> In his Petition, he requested to the trial court to reenter his 7/6/2010 judgment against
> him, with the result of reinstating the time which he may timely file a notice of appeal
> pursuant to Ohio App.R.4(A), according to the Ohio Supreme Court's instructions in
> *State v. Gover*, *supra*.
>
> **GROUND TWO:** Petitioner was denied his due process right to appeal and the effective
> assistance of counsel on appeal of right because the trial court did not advise petitioner of
> any of his appellate rights pursuant to Ohio Crim.R.32(B) and his right to counsel on
> appeal of right.
>
> **Supporting Facts:** At the July 6, 2010 sentencing hearing, the trial court did not advise
> petitioner of his right to appeal his sentence or conviction pursuant to Ohio
> Crim.R.32(B).
>
> In the petition, Petitioner requested for the trial court to reenter the 7/6/2010 judgment
> against him, with the result of reinstating the time within which he may timely file a

---

[1]     Under the mailbox rule, the filing date for a pro se petition is the date that a
petitioner delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266
(1988).  While the Petition herein did not arrive at the Court for filing until
August 18, 2015, Petitioner states that he placed it in the prison mailing system on
August 8, 2015.  (Doc. No. 1 at 13).  Thus, the Court will consider the Petition as
filed on August 8, 2015.

10

notice of appeal pursuant to Ohio App.R.4(A), according to the instructions of *State v. Gover* (1995), 71 Ohio St.3d 577, 645 N.E.2d 1246.

The trial court's July 8, 2010 final order and journal entry also is void of any rights to appeal or his right to counsel.

**GROUND THREE:** Trial counsel did not inform petitioner of his right to appeal pursuant to Ohio Crim.R.32(B) after petitioner was sentenced.

**Supporting Facts:** After petitioner was sentenced on July 6, 2010, he was indigent and had never been to prison before, he had no legal knowledge. After the sentencing hearing, trial counsel Stephen Smith withdrew from the case, and he did not advise petitioner of his right to appeal within 30 days or that he had a right to counsel to file his appeal.

Trial counsel did not ask the court at the sentencing hearing to appoint petitioner counsel to file a direct appeal. Petitioner was not aware after the sentencing hearing that he had a right to appeal his conviction and sentence.

**GROUND FOUR:** The Court of Appeals erred in finding his petition untimely pursuant to O.R.C. 2953.21 and O.R.C. 2953.23.

**Supporting Facts:** The Ohio Court of Appeals violated petitioner's due process rights and his equal protection of the law by refusing to grant his post-conviction petition, when petitioner met the requirements under R.C. 2953.23(A)(l). Petitioner followed the Ohio Supreme Court's instructions in *State v. Gover*, *supra*.

O.R.C. 2953.23(A)(l)(a) states "Either the petitioner shows that the petitioner was unavoidably prevented for discovery of the facts upon which the petitioner must rely to present the claim for relief,***." The key word is "shows." Petitioner could not show the trial court"s failure to advise him of his appellate rights without the sentencing transcripts.

Meanwhile, petitioner kept writing letters to the court reporter asking for updates on the transcripts. On March 30, 2015, the court reporter filed only the sentencing transcripts with the trial court. No plea hearing transcripts.

Had petitioner filed his petition relying only on his self-serving affidavit in April 2013, after his delayed appeal was dismissed, res judicata would have precluded petitioner from re-litigating the issues now after obtaining the needed sentencing transcripts from the court reporter.

11

**GROUND FIVE:** The Court of Appeals erred in denying his post-conviction petition appeal to correct an error in the pre-appellate process that had the same effect as if the trial court had not appointed appellate counsel.

**Supporting Facts:** In its opinion, after reading the sentencing transcripts, the Court of Appeal [sic] stated that "during the sentencing hearing, the trial court did not inform appellant that he had the right to appeal the propriety of his guilty plea and sentence. [sic]. In addition, the final judgment entry did not contain any reference to that right. ¶3.

The Court of Appeals acknowledges the trial court's error but nevertheless refused to reverse the judgment of the trial court.

(Doc. No. 1).

On September 29, 2016, Respondent filed a motion to dismiss the Petitioner's Petition as time-barred. (Doc. No. 14). Respondent alternatively argued that Grounds One, Four, and Five should be dismissed as non-cognizable. *Id.* On October 24, 2016, Petitioner filed a response to Respondent's motion styled as a "traverse." (Doc. No. 15). On November 3, 2016, Petitioner filed a motion to supplement the traverse. (Doc. No. 16). On December 30, 2016, Petitioner filed a motion to expand the record. (Doc. No. 17). On May 8, 2017, Petitioner filed a motion for summary judgment. (Doc No. 23).

On May 12, 2017, the Court issued an order denying Respondent's motion to dismiss (Doc. No. 14 ) without prejudice subject to refiling the arguments presented therein in the Return of Writ. (Doc. No. 24). Respondent was ordered to present a complete response to the petition and address all arguments relative to the grounds raised in the petition, including the statute of limitations, any applicable arguments regarding exhaustion and/or procedural default, and the merits of Petitioner's claims. (Doc. No. 24). In a separate order, the Court denied Petitioner's

12

motion to supplement the traverse.  Petitioner's motion to expand the record was denied in part, granted in part, and moot in part. [2]  (Doc No. 25).

On June 9, 2017, Respondent filed his Answer/Return of Writ and Opposition to Petitioner's motion for summary judgment.  (Doc. No. 25).  On June 19, 2017, Petitioner filed a motion for entry of default judgment against respondent.  (Doc. No. 27).  On June 26, 2017, Petitioner filed objections to Respondent's Answer/Return of Writ.

This matter is now ripe and ready for the Court's consideration.

## II. Law and Argument

Respondent maintains that the Petition should be dismissed as time-barred. Alternatively, Respondent argues that Petitioners claims are variously defaulted, non-cognizable, or without merit.  The Court addresses the parties' arguments below.

### A. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides a one-year limitations period in a habeas action brought by a person in custody pursuant to the judgment of a State court.  Section 2244 states, in pertinent part:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[2]     Specifically, the motion to expand was denied as moot with respect to the sentencing transcripts and the victim's and victim's mother's impact statements; granted with respect to the transcript of the plea proceedings; and denied with respect to the presentence investigation report.  (Doc. No. 25).

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence

28 U.S.C. § 2244.

The federal limitations period may be statutorily tolled during this one-year time period. Specifically, Section 2244(d)(2) provides that the time during which a "properly filed" application for post-conviction relief is pending in state court shall not count against the one-year limitations period.  28 U.S.C. 2244(d)(2).  However, where a state post-conviction petition was not timely filed as a matter of state law, that motion is not "properly filed" for purposes of federal statutory tolling and so does not toll the one-year limitations period.  *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005).

In addition, a motion for state post-conviction relief does not serve to restart a one-year limitations period if that period has already expired.  *See Waldron v. Jackson*, 348 F. Supp. 2d 877, 883 (N.D. Ohio 2004).  "The tolling provision does not . . . 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."  *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (quoting *Rashid v. Khulmann*, 991 F.Supp. 254, 259 (S.D.N.Y.1998)).

14

In *DiCenza v. Rose*, 452 F.3d 465 (6th Cir. 2006), a panel of the Sixth Circuit evaluated separately the limitations periods that apply to errors claimed to have occurred at sentencing, on the one hand, and errors claimed to have occurred when the state appeals court denied the petitioner's motion for leave to file delayed appeal, on the other.  Similarly, this Court will consider Petitioner's appeal based claims (Grounds One, Four, and Five) separately from his sentencing based claims (Grounds Two and Three).

**1. Petitioner's Sentencing Based Claims**

**a. 28 U.S.C. § 2244(d)(1)(A)**

Petitioner's Grounds for relief Two and Three allege violations of due process and ineffective assistance of counsel as a result of the trial court's and his attorney's failure to advise Petitioner of his appellate rights.  These claims relate to alleged errors that occurred during Petitioner's sentencing hearing, which was held on July 6, 2010.  If it is assumed that Section 2244(d)(1)(A) applies, the limitations period started to run on the date that the Petitioner's conviction became final.  Here, because Petitioner did not file a timely direct appeal, the judgment became final and the limitations period started to run 30 days after sentencing on August 5, 2010–when the time for seeking direct review expired.  There are no potential periods of tolling during the year following the date of accrual.  Thus, the limitations period would have run out one year later on August 4, 2011.  As such, pursuant ot 28 U.S.C. § 2244(d)(1)(A), Petitioner's federal habeas petition, filed May 10, 2016, was too late.

**b. 28 U.S.C. § 2244(d)(1)(D)**

However, as described in *DiCenza v. Rose*, 452 F.3d 465 (6th Cir. 2006), an otherwise untimely federal habeas petition may be timely when a defendant is not advised of his right to

15

appeal. In such a scenario, claims that relate to events that occurred at the time of sentencing

may be timely under 28 U.S.C. § 2244(d)(1)(D), if the petitioner acted in a reasonably diligent

manner in learning about his right to appeal:

> The proper task in a case such as this one is to determine when a duly diligent person in petitioner's circumstances would have discovered [his right to an appeal]. After that date, petitioner was entitled to further delay (whether in actually making the discovery, or in acting on a previously made discovery, or for any other reason whatsoever), so long as he filed his petition within one year of the date in which the discovery would have been made in the exercise of due diligence. *Wims*, 225 F.3d at 190.

* * *

> [T]he date on which the limitations clock began to tick is a fact-specific issue the resolution of which depends, among other things, on the details of [a defendant's] post-sentence conversation with his lawyer and on the conditions of his confinement in the period after [sentencing]. *Wims*, 225 F.3d at 190-91 (citing *Easterwood v. Champion*, 213 F.3d 1321, 1323 (10th Cir. 2000) (taking into account "the realities of the prison system" in determining due diligence)).

*Id.* at 470-471. "[P]etitioner bears the burden of proving that he exercised due diligence, in order

for the statute of limitations to begin running from the date he discovered the factual predicate of

his claim, pursuant to 28 U.S.C. § 2244(d)(1)(D). *Id.* at 471 (citing *Lott v. Coyle*, 261 F.3d 594,

605-06 (6th Cir.2001)).

In *DiCenza*, a state prisoner pled guilty to aggravated vehicular homicide in May 1999.

At sentencing, he was not notified of his right of appeal. *DiCenzi*, 452 F.3d at 467. *Id.* Over

two years later, in August 2001, immediately after a public defender advised him of his appeal

rights, the prisoner filed a motion for delayed appeal, which was denied in September 2001. *Id.*

On October 5, 2001, the prisoner, through counsel, filed a motion for reconsideration, which was

denied on October 24, 2001. *Id.* Counsel filed a motion for delayed appeal in the Ohio Supreme

16

Court in November 16, 2001.  *Id.*  The motion was granted but the appeal was eventually

dismissed on April 3, 2002.  *Id.*

 The prisoner filed for federal habeas relief on April 3, 2003, bringing sentencing based

and appeals based claims.  *Id.* at 469.  In addressing respondent's motion to dismiss, the court

concluded that the appeal-based claim accrued pursuant to 28 U.S.C. 2244(d)(1)(D) in

September 2001, when the state court of appeals denied his motion for delayed appeal.  *Id.* at

468-69.  As for the errors that allegedly occurred at sentencing – the due process and ineffective

assistance of counsel claims – the court considered whether the limitations period started running

on "the date on which the factual predicate of the claim or claims presented could have been

discovered through the exercise of due diligence" pursuant to 28 U.S.C. § 2244(d)(1)(D).  *Id.* at

469-70.  In order to determine when exactly that was, the court required consideration of (1)

when the petitioner first learned of his right to appeal; and (2) when a reasonably diligent person

in the petitioner's position could be reasonably expected to learn of his appeal rights.  Because

the district court failed to make factual findings on either issue, the case was remanded for

further proceedings.  *Id.* at 471.

 Under *DiCenza*, the question of due diligence is fact-specific and depends on various

considerations, including the petitioner's post-conviction conversations with his lawyer and the

conditions of his confinement after sentencing. *Id.* at 471.  In one representative case, a district

court found a failure of due diligence where petitioner took no action for over a year after

learning of his appeal right.  *Korbel v. Jeffreys*, No. 2:06-CV-625, 2007 WL 3146248, at *8

(S.D. Ohio Oct. 24, 2007), report and recommendation adopted, No. 2:06-CV-625, 2008 WL

207932 (S.D. Ohio Jan. 24, 2008).  In another case, petitioner failed to demonstrate due

diligence where he made no effort to learn about his right to appeal for seven years when he wrote the public defender. *Ward v. Timmerman-Cooper*, No. 2:07-CV-41, 2008 WL 214411, at *5 (S.D. Ohio Jan. 23, 2008); *See also Baker v. Wilson*, No. 5:06 CV 1547, 2009 WL 313325, at *12 (N.D. Ohio Feb. 6, 2009) (Petitioner did not carry "his burden of demonstrating due diligence where he was represented by retained counsel yet did not obtain the journal entry that he now claims alerted him to his right to appeal until over a year after it was entered.").

On the other hand, the Sixth Circuit has held that a petitioner's two month delay in inquiring whether his attorney had filed an appeal was not unreasonable. *Granger v. Hurt*, 90 Fed.Appx. 97, 99-101 (6th Cir. Jan. 23, 2004). In another case, the Second Circuit found that a petitioner exercises due diligence despite a five month delay in discovering that his attorney had not filed an appeal as he had promised. *Wims v. United States*, 225 F.3d 186, 190 n.4 (2d Cir. 2000).("[t]he statute does not require maximum feasible diligence, only 'due,' or reasonable, diligence.").

In the present case, Petitioner maintains that a duly diligent person in his circumstances could not have reasonably discovered his right to appeal earlier than February 13, 2013, the date that he filed his motion for delayed appeal in state court. Petitioner points out that neither his lawyer nor the sentencing court advised him that he had the right to appeal his conviction or sentence. (Doc. No. 15 at 3). Indeed, the Court's own review of the sentencing transcript reveals that he was not so advised by the trial court. (*See* Redacted Sentencing Transcript, Doc. No. 20). The state court of appeals acknowledged as much in its December 22, 2015 opinion

affirming the trial court's denial of Petitioner's motion to vacate his conviction and sentence.[3] (R. 386). Further, the written plea of guilty, while noting that certain appeal rights were waived, did not affirmatively advise Petitioner of any right to appeal.  Thus, it is reasonable to conclude that Petitioner was not aware of his right of appeal immediately following his sentencing.

However, with the entry of judgment, Petitioner's duty of diligence commenced.  See *Shorter v. Richard*, 659 F. App'x 227, 232 (6th Cir. 2016).  As to whether Petitioner acted with due diligence from that point forward, the following facts are relevant.  First, at the end of 2010, Petitioner was transferred between four different institutions.[4]  (Doc. No. 15 at 3-4).  Petitioner asserts that during that time he was informed by two different inmates in two different prison law libraries that he had no right to appeal since he had pled guilty.  (Doc. No. 15 at 4).  In October 2010, after his third transfer, another inmate recommended he request the transcripts of his change of plea and sentencing hearings.  Petitioner wrote the court reporter in November or December 2010 asking for transcripts, but the court reporter never responded.  Petitioner indicates that in January 2011, he attempted to contact his prior counsel, but counsel never responded.

In March 2011, Petitioner wrote to the Office of the Ohio Public Defender, seeking advice about any potential remedies in his case.  On April 18, 2011, an intake attorney wrote

---

[3]  As stated by the court of appeals, "During the sentencing hearing, the trial court did not inform appellant that he had the right to appeal the propriety of his guilty plea and sentence.  In addition, the final sentencing judgment did not contain any reference to that right." (R. 386).

[4]  After sentencing, he was sent to Portage County Jail.  On July 8, 2010 he was transferred to Lorain Correction Institution, and, on August 26, 2010, he was moved to Madison Correctional Institution, and, in October 2010, he was moved to Trumbull Correctional Institution.

19

back noting that Petitioner had written seeking advice regarding "post-conviction relief, direct appeal, and a sentence reduction." (R. 62). The attorney noted that "[a] defendant who enters a knowing, voluntary, and intelligent guilty plea waives all nonjurisdictional defects for the purpose of future proceedings." *Id.* The attorney also indicated that if the court properly determined that his plea was voluntary; that he understood the effects of the guilty plea at the time; and that at the time the plea was entered he understood that he was waiving his rights, it would "be very difficult to challenge your plea." *Id.* The attorney included a *pro se* post-conviction petition packet, and he told Petitioner to "[p]lease respond as promptly as possible." (R. 63). Petitioner never followed up with the public defender.

Petitioner also contacted an attorney he knew, who wrote back on April 15, 2011, advising Petitioner to contact various legal clinics. (R. 64). On August 22, 2011, Petitioner reached out to Case Western Reserve Legal Clinic, and, on November 1, 2011, the clinic wrote back stating that they would be unable to assist in his case. (R. 65). The record also shows that Petitioner attempted, without success, to contact the law clinic at Cleveland State University. (R. 66). Later, in May 2012, petitioner filed a motion for discovery in the trial court requesting the transcripts, but it is not evident that the court ever ruled on the motion. (R. 32). Petitioner took no further action in relation to his case until February 13, 2013, when he filed his motion for delayed appeal. Petitioner claims the statute of limitations should start running from this date.

In light of the facts addressed above, the Court finds that Petitioner has failed to meet his burden to show that a reasonably diligent person in his circumstances could not have discovered his right to appeal before February 13, 2013. There are numerous facts that weigh against him.

20

First, although Petitioner claims that he only learned of his right to appeal in February 2013, he fails to explain how he learned of it.  According to Petitioner, on February 12, 2013, he could not have reasonably known of his right to appeal, but on February 13, 2013, he could.  But, there is no explanation as to why a duly diligent person would have been unaware one day but knowledgeable the next.  This is important because if the Court is to determine that Petitioner was acting with the appropriate measure of diligence, it should be apprised of what actually precipitated his decision to file his motion.  In addition, there must be evidence to show that, but for that trigger, his right of appeal could not have been reasonably discovered before February 13, 2013.  The last action taken by Petitioner prior to the filing that motion was about nine months earlier when he filed a motion for discovery on May 14, 2012.  Petitioner does not explain what transpired during this nine month period, nor does he offer any basis for the Court to conclude that a duly diligent person in his circumstances would have simply done nothing during that time

Petitioner argues that his delay was reasonable given that the sentencing transcripts were not available to him.  He points out that his two requests for transcripts, one in November or December 2010 and another in May 2012, both went unanswered.  As a consequence, he asserts, the delay was reasonable because he could not have known that the trial court had failed to inform him of his appeal rights.  Although Petitioner's inability to obtain trial court transcripts was a clear obstacle in his ability to fully understand the procedural facts of his own case, the issue here is not whether a reasonable person in Petitioner's circumstances was duly diligent in his attempts to learn *the fact* that the trial court had failed to inform him of his appeal rights.  Rather, as explained in *DiCenza*, the appropriate trigger is the date "when a reasonably diligent

21

person in [Petitioner's] position could be reasonably expect to learn of his appeal rights."

*DiCenza*, 452 F.3d at 471 (citing *Wims*, 225 F.3d at 190-91) (emphasis added).

In this case, the fact that Petitioner was seeking out the state court transcripts in late 2010 and May 2012 is certainly relevant to the diligence inquiry. However, whatever degree of diligence these efforts represent is diminished by his failure to take additional steps with the public defender who corresponded with him in April 2011. Based on the letter from the Office of the Ohio Public Defender dated April 18, 2011, it is apparent that Petitioner had inquired about "post-conviction relief, direct appeal, and a sentence reduction." (Tr. 62). Thus, it is evident that prior to April 18, 2011, Petitioner at least understood that a direct appeal existed as a procedural mechanism, despite the trial court's failure to advise him of his appeal right during sentencing. In response to Petitioner's inquiry, the public defender described the difficulties of appealing his guilty plea:

> . . . [A] defendant who enters a knowing, voluntary, and intelligent guilty plea waives all nonjurisdictional defects for the purpose of future proceedings. The waiver is effective both for direct appeal and collateral attack of a conviction. A guilty plea waives the right to challenge the sufficiency of the evidence.
>
> Ohio Rule of Criminal Procedure 11(C)(2) requires that a trial court determine from conversation with the defendant: 1) whether the defendant's plea was voluntary; 2) whether the defendant understood the effects of the guilty plea at the time he entered it; and 3) whether the defendant, at the time he entered his guilty plea, understood that by entering the plea he was waiving constitutional rights. The underlying purpose, from the defendant's perspective, of Ohio R. Crim. P. 11(C) is to convey to the defendant certain information so that he can make a voluntary and intelligent decision whether to plead guilty. If the court complied with the Rule in your case, it will be very difficult to challenge your plea.
>
> * * *
>
> Again, I must emphasize the risks in now challenging your plea. If the plea is vacated you face all possible penalties [a]gain, including the charges previously dismissed under the plea.

22

Please respond as promptly as possible.

(R. 62-63).

Although Petitioner is correct that this letter does not directly and affirmatively state that Petitioner in fact had a right to appeal his guilty plea or that a trial court must inform a defendant of his appeal rights, the letter provides sufficient information that a duly diligent person in Petitioner's circumstances should have discovered the right to appeal within some reasonable amount of time thereafter, even taking into account the realities of prison life.  A careful reading of the letter reveals the availability of appeal on two potential grounds.  First, as Petitioner appears to have understood, he did not waive jurisdictional defects by entering a plea.  Second, a careful reading of the letter indicates that a guilty plea may be challenged on the ground that it was not knowing, voluntary, and intelligent.  Further, the letter indicates that "it will be very difficult to challenge your plea," which implies that an appeal of a plea is not completely foreclosed.

Petitioner claims that he subjectively did not understand the import of this letter, but, even allowing Petitioner a certain degree of latitude since he is not an attorney, a duly diligent person in Petitioner's circumstances should have discovered his appeal right earlier than February 2013.  Importantly, the Office of the Ohio Public Defender advised Petitioner to "respond as promptly as possible," but Petitioner did not follow up.  Instead, he contacted a number of other legal clinics and attorneys, none of which would assist him.  Petitioner was offered an opportunity to follow up with the public defender, who had endorsed, at least the possibility of direct appeal, but Petitioner did not take it.

23

In addition, while Petitioner claims he did not know of his right to appeal until February 2013, there is record evidence reasonably indicating that Petitioner subjectively understood that he had a right to appeal prior to that time, perhaps, as early as April 2011, around the time he received a response from the public defender.  In Petitioner's Affidavit of Facts, submitted in February 2013 with his motion for leave to file direct appeal, he stated the following:

> Since I believed that an error had occurred in the plea agreement considering the evidence permitted, so in April, 2011, I decided to write the Ohio Public Defender's Office and inquire about direct appeal and post-conviction remedies and options.  John Fenlon from the Public Defender's office responded to my inquiry on April 18, 2011 . . . with information regarding direct appeals and post-conviction remedies.  Knowing that I get one chance to appeal, I knew I had to file it properly.

(R. 60).  Based on Petitioner's assertion that he "knew [he] had to file it properly," it is not unreasonable to conclude that Petitioner knew, at the time he wrote the public defender, that he had the right to file an appeal.

As already noted, the written plea of guilty dated June 2, 2010 did not advise Petitioner that he had a right of appeal.  However, it indicated that Petitioner averred

> [t]hat I have been informed that by pleading guilty I waive my right to appeal any issues that might have been raised had I gone to trial and been convicted, and I under that right of appeal and it is my intention to waive it.

(R. 26).  This language indicates that he had waived some, but not all, appeal rights.  Although a duly diligent person may not have immediately understood that he retained some right of appeal, it should not have taken until February 13, 2013 to discover that right.

Based on all the evidence discussed above, the Court concludes that Petitioner has failed to demonstrate that a duly diligent person in his circumstances could not have discovered his right to appeal earlier than February 13, 2013.  Under *DiCenza*, the Court is required to weigh the evidence and determine "when a reasonably diligent person in [Petitioner's] position could

24

be reasonably expect to learn of his *appeal rights*." *DiCenza*, 452 F.3d at 471.  The Court

concludes, having duly considered the record, if he had been acting with due diligence,

Petitioner could have reasonably discovered his right to appeal on, or within some reasonable

time after, April 18, 2011, when he received the letter of the Office of the Ohio Public Defender.

If Petitioner is generously allowed an additional six months from that date, his claim would have

accrued on October 18, 2011.  Absent tolling, the limitations period would have run out one year

later on October 18, 2012.  Thus, the Petition, having been filed August 8, 2015, was untimely.

### 2. Petitioner's appeal based claims

In Ground One, Petitioner challenges the decision of the trial court denying his motion to

vacate or set aside judgment.  Grounds Four and Five challenge the court of appeals decision

affirming the trial court's decision.  Assuming these claims are cognizable on habeas review, the

Court concludes they are also time-barred.

With respect to these "appeal-based claims," *DiCenzi* again guides the Court's analysis.

That case, as described above, involved a state prisoner's federal habeas challenge to an Ohio

court of appeals' decision denying the prisoner's motion for delayed appeal.  In addressing the

respondent's time-bar argument, the Sixth Circuit held that the Ohio court of appeals' denial of

the motion for delayed appeal was the factual predicate for his appeal-based claim and that the

statute of limitations began to run on the date of that decision pursuant to 28 U.S.C. §

2244(d)(1)(D).  Thus, *Dicenza* holds that an appeal based claim–e.g., a claim that challenges the

decision of a court of appeals denying a motion for delayed appeal–accrues when the factual

predicate becomes known–the date the decision is entered.

Relevant to this discussion is *Johnson v. United States*, 544 U.S. 295 (2005), in which a federal prisoner presented a habeas challenge to an enhanced federal sentence which was supported by a state conviction that had been vacated.  The Supreme Court held that even though the prisoner had filed his habeas challenge within one year of the state court order vacating the earlier conviction, his petition was still untimely because the petitioner failed to show due diligence in seeking to vacate the state court conviction pursuant to § 2255(f)(4), the analog to § 2244(d)(1)(D) applicable to federal convictions.  As explained by the Court:

> Where one "discovers" a fact that one has helped to generate, . . . whether it be the result of a court proceeding or of some other process begun at the petitioner's behest, it does not strain logic to treat required diligence in the "discovery" of that fact as entailing diligence in the steps necessary for the existence of that fact.

*Johnson*, 544 U.S. at 310.  Thus, in order to be timely, a habeas petitioner challenging an enhanced federal sentence based on a vacated state court conviction must have acted with due diligence in seeking to vacate the state court conviction.

Another case, *Shorter v. Richard*, 659 Fed.Appx. 227 (6th Cir. August 12, 2016), involved a state prisoner who challenged an Ohio court of appeals decision denying his motion for delayed appeal.  The respondent sought dismissal on limitations grounds, and the petitioner argued that his claim accrued and the limitations period started to run when the state court of appeals decision was issued.  However, the court, pursuant to *Johnson*, held that because the petitioner was not duly diligent in filing his motion for delayed appeal, his habeas petition was untimely.

In the present case, Petitioner maintains that pursuant to *DiCenza*, the statute of limitations for his appeals-based claims started to run on February 9, 2015, the date the trial court denied his motion to vacate or set aside judgment, and December 22, 2015, the date the

26

court of appeals affirmed the trial court's decision.  As such, because Petitioner filed his federal habeas petition on May 10, 2016, he maintains that his claims are timely.[5]

The Court disagrees.  As described in *Johnson* and *Shorter*, a habeas petitioner seeking to take advantage of a later limitations start date under 28 U.S.C. § 2244(d)(1)(D) must have exercised due diligence in pursuing the state court claims that resulted in the decision being challenged on habeas review.  Here, the underlying state court post-conviction challenges were based on the trial court's and Petitioner's lawyer's failures to advise Petitioner that he retained some rights of appeal.  (R. 325, 384, 393).  The question then is when a duly diligent person in Petitioner's circumstances would have discovered these claims.  *See DiCenza*, 452 F.3d at 471. As already discussed supra Sec. II., A., 1., based on the signed plea and Petitioner's various communications with lawyers following entry of judgment, a person in Petitioner's circumstances exercising due diligence should have discovered, within some reasonable time after April 18, 2011, a right to challenge on appeal the trial court's and his attorney's alleged failures to advise him of his appeal rights.

As already described, at that time in 2011, Petitioner had received a response from the Ohio Public Defender's Office, which included a *pro se* post-conviction packet.  As stated in the letter, "[t]he petition is a fill in the blanks form designed to guide the untrained pro se petitioner through the post-conviction process."  The letter further described how the form should be filled out and where it should be mailed.  It was not until four years later in February 2015 that Petitioner moved for post-conviction relief.  As discussed at length above, in relation to

---

[5]    Even if the Court were to accept Petitioner's theory, his federal petition is untimely with respect to Ground One, since the trial court denied his motion February 9, 2015 and he filed his habeas petition on May 10, 2016.

27

Petitioner's sentencing based claims, Petitioner has failed to demonstrate that he was acting with the required diligence during that time period.

### B. Equitable Tolling

AEDPA's statute of limitations "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 649 (2010).  A court may review a time-barred petition only if Petitioner shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way'" that prevented the timely filing of the habeas petition.  *Id.* at 649 (quoting *Pace*, 544 U.S. at 418).  The Sixth Circuit has observed that "the doctrine of equitable tolling is used sparingly by federal courts."  *See Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010).  The burden is on a habeas petitioner to show that he is entitled to the equitable tolling of the one year limitations period.  *Id.*

The Sixth Circuit has declined to allow equitable tolling where the petitioner alleges that the court or his attorney failed to notify the petitioner about the outcome of state court appeal. *See Robinson*, 424 Fed.Appx. 440-43 (petitioner's attorney failed to inform him of the appellate decision for more than one year after it issued); *Winkfield v. Bagley*, 66 Fed.Appx. 578, 583–84 (6th Cir.2003) (no equitable tolling even where a petitioner's attorney misled him into believing that his appeal was still pending before the state court because the petitioner failed to diligently monitor the progress of his appeal); *Elliott v. Dewitt*, 10 Fed.Appx. 311, 312–13 (6th Cir.2001) (no equitable tolling where a petitioner alleged that the state court and his attorney failed to inform him that a decision had been rendered affirming his conviction).

Similarly, Petitioner's claim herein that he was not notified by the court or counsel is insufficient to toll the statute of limitations.  Petitioner's appellate attorney's failure to provide

28

notice to Petitioner does not amount to an extraordinary circumstance justifying equitable tolling. In sum, because Petitioner failed to exercise his rights diligently and no extraordinary circumstance prevented Petitioner from filing, equitable tolling is not warranted in this case.

### C. Miscarriage of Justice Exception

A petitioner may overcome the AEDPA time bar with a showing of a "miscarriage of justice." To satisfy this exception, a petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). In this case, Petitioner provides no new evidence that would justify tolling the limitations period under the miscarriage of justice exception.

## III. The Standards for Exhaustion and Procedural Default and Review on the Merits

### A. Exhaustion and Procedural Default

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b),( c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless a petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural

29

rules in presenting his claim to the appropriate state court. *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[6] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.") This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct

---

[6]     In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default, not exhaustion, bars federal court review.  *Id*.  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

     A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

     A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense

31

impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991).  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  *See also Jones v. Bradshaw*, 489 F. Supp.2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 2012 WL 3711552 at * 7 (6th Cir. Aug. 29, 2012).

### B.      Standard for Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

32

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any
claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court.  *See Parker v. Matthews*, 132 S. Ct. 2148, 2012 WL 2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett*, 559 U.S. 766 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 2012 WL 2076341, *6; *See also Lopez v. Smith*, 135 S.Ct. 1, 4, (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.' " (quoting *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court

33

identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id.* (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87.  This is a very high standard, which the Supreme

34

Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

### V.       Discussion

#### A.       Grounds One, Four, and Five

In Ground One, Petitioner asserts that the trial court abused it discretion in denying his petition to vacate or set aside judgment of conviction without a hearing.  In Ground Four, Petitioner maintains that the Court of Appeals erred in finding his petition untimely pursuant to O.R.C. 2953.21 and O.R.C. 2953.23.  In Ground Five, Petitioner alleges that the Court of Appeals erred in denying his post-conviction petition appeal to correct an error in the pre-appellate process that had the same effect as if the trial court had not appointed appellate counsel.

Respondent argues, and the Court agrees, that these claims are non-cognizable, as they do not provide a basis for federal habeas relief.  It is well-settled that alleged errors in post-conviction proceedings are outside the scope of habeas relief.  *See Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 854-55 (6th Cir. 2017) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief") citing *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001); *see also Cress v. Palmer,* 484 F.3d 844, 853 (6th Cir. 2007) ("the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration") (internal citations omitted).  This is because "'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.' " *Kirby*, 794 F.2d at 246 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

35

In the present case, Petitioner concedes that Grounds One, Four, and Five each attack alleged errors that occurred in post-conviction proceedings. Ground One relates to the trial court's February 9, 2015 denial of his motion to vacate; Ground Two relates to the Court of Appeal's decision affirming that denial; and Ground Three attacks the Court of Appeals decision on the ground that it in effect condoned the trial court's failure to appoint appellate counsel. While Petitioner maintains that his claims are rooted in Constitutional violations which are cognizable on habeas review, he cites no case law or argument to support this idea.  Having given his claims due consideration, the Court concludes that the errors alleged in Grounds One, Four, and Five are not reviewable under AEDPA.

### B. Ground Two

In Ground Two, Petitioner alleges that he was denied his due process right to appeal and the effective assistance of counsel because the trial court did not advise him of his appellate rights and his right to counsel on appeal.[7]

### 1. Cognizabilility

With respect to the state trial court's failure to notify Petitioner of appeal rights, Respondent argues that his claim is non-cognizable.  The Court agrees.  There is no clearly established federal law to support the idea that due process requires a state trial court to provide advice about appeal rights.  *See Moss v. Warden, Lebanon Corr. Inst.*, Case No. No. 1:09-CV-280, 2010 WL 3703273, at *3 (S.D. Ohio June 7, 2010).  For the proposition that such a right exists, Petitioner cites *Peguero v. United States*, 526 U.S. 23, 27 (1999).  In that case, the

---

[7]      Petitioner's allegations with respect to counsel's ineffectiveness will be addressed below as part of Ground Three, which raises a related claim.

Supreme Court did not address the constitutional question being raised here – whether due process requires that a state trial court notify a defendant of his appeal rights. *Id.* Rather, the Court addressed a federal defendant's right to relief in a situation where the trial court fails to provide notice of the right to appeal in violation of Fed. R. Crim P. 32(a)(2). *Id.* The Court held that "as a general rule, . . . a court's failure to give a defendant advice required by the Federal Rules is a sufficient basis for collateral relief only when the defendant is prejudiced by the court's error." *Id.* This holding, which related to a violation of the Federal Criminal Rules, not the U.S. Constitution, is inapplicable to the due process violation being alleged here. *Peguero* does not stand for the proposition that Petitioner claims it does.

Petitioner also cites a district court case in support of his position. In *Wolfe v. Randle*, 267 F. Supp. 2d 743, 746 (S.D. Ohio 2003), the court held that "due process is offended when a defendant who pled guilty is kept completely ignorant of his appellate rights." The ultimate question on habeas review is whether the state court decision was "contrary to, or an unreasonable application of *clearly established Federal law, as determined by the Supreme Court of the United States.*" Importantly, *Wolfe* was not a decision of the U.S. Supreme Court, and, by itself, does not represent clearly established federal law. The following reasoning, set forth in *Moss v. Warden*, is instructive on the issue raised in *Wolfe*:

> [In *Wolfe*], Judge Spiegel of this Court found that "[t]he right of notice is more fundamental than the rights previously guaranteed by the Supreme Court," 267 F.Supp.2d at 747, citing *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), *Peguero v. United States*, 526 U.S. 23, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999), *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); and *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), as prior Supreme Court cases recognizing rights on appeal purportedly less fundamental than the right to notice. *Peguero* is not a constitutional case but, like *Butler*, involved Fed.R.Crim.P. 32; the Supreme Court unanimously rejected habeas corpus relief where the defendant was not properly advised of his right by the trial judge, but knew of it otherwise. In *Evitts*, the Supreme Court held

that the Due Process Clause of the Fourteenth Amendment guaranteed a state criminal defendant the effective assistance of counsel on his first appeal of right, building on the holding in Douglas that there was a right to appointed counsel on first appeal of right for an indigent defendant, if the State created a first appeal of right. *Griffin* had held an indigent defendant-appellant must be furnished with a free transcript of trial proceedings if a transcript is required for the appeal.

While the extension of *Evitts*, *Douglas*, and *Griffin* to a due process right to notice of state appeal rights would certainly be logical, it is not an extension which is "clearly established" by holdings of the United States Supreme Court. Holdings of the Supreme Court point in the opposite direction as well. For example, the right to have an appeal is more fundamental even than the right to notice of appeal rights. Yet the Supreme Court has firmly and repeatedly held there is no federal constitutional right to direct appeal in state criminal proceedings. *McKane v. Durston*, 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894), cited as still good law in *Lopez v. Wilson*, 426 F.3d 339, 355 (6th Cir.2005). "Due process does not require a State to provide appellate process at all." *Goeke v. Branch*, 514 U.S. 115, 120, 115 S.Ct. 1275, 131 L.Ed.2d 152 (1995).

*Moss v. Warden, Lebanon Corr. Inst.*, Case No. 1:09-CV-280, 2010 WL 3703273, at *3 (S.D. Ohio June 7, 2010), and report and recommendation adopted, No. 1:09-CV-280, 2010 WL 3703284 (S.D. Ohio Sept. 16, 2010).  As described in *Moss*, the idea that due process requires notice of state appeal rights is not a subject of clearly established federal law, as determined by the U.S. Supreme Court.  Therefore, based on *Moss's* reasoning, the undersigned concludes that Petitioner has not established a cognizable claim for relief based on the state trial court's failure to notify him of his appeal rights.

### C.      Ineffective Assistance of Counsel - Grounds Two and Three

In Grounds Two and Three, Petitioner maintains that trial counsel did not inform him of his right to appeal pursuant to Ohio. Crim. R. 32(b) after he was sentenced.  In support, Petitioner asserts the following:

After petitioner was sentence on July 6, 2010, he was indigent and had never been to prison before, he had no legal knowledge. After the sentencing hearing, trail counsel Stephen Smith withdrew from the case, and he did not advise petitioner of his right to appeal within 30 days or that he had a right to counsel to file his appeal.

38

> Trial Counsel did not ask the court at the sentencing hearing to appoint petitioner counsel to file a direct appeal. Petitioner was not aware after the sentencing hearing that he had right to appeal his conviction and sentence.

(Doc. No. 1).

Respondent argues, and the Court agrees, that this claim is procedurally defaulted.  As described below, Petitioner did not fairly present this claim by raising and pursuing it through Ohio's "ordinary appellate review procedures." *Boerkel*, 526 U.S. at 848.  As a consequence, because this claim was not properly raised in state court and no further state court remedies remain, it is procedurally defaulted.  *Engle*, 456 U.S. at 125 n. 28.

Petitioner did not file a timely direct appeal of his July 10, 2010 conviction and sentence. In his delayed appeal in February 2013, Petitioner did not argue ineffective assistance of counsel based on counsel's alleged failure to advise him of his appeal rights.  (See R. 33, 54).  While he raised an ineffective assistance of counsel claim in a motion for reconsideration filed in April 2013, he did not base that motion on counsel's alleged failure to notify him of appeal rights.  (R. 71).  Nor did Petitioner raise the issue in a second motion for delayed appeal file in July 2013, and he did not appeal the denial of motion to the Ohio Supreme Court.  (R. 87, 99).  Additional briefing was filed in August and October 2013, but the issue of ineffective assistance of counsel was not raised.  (R. 103, 125).  In a motion for reconsideration filed on October 28, 2013, Petitioner indicated that the trial court did not advise him of his right to appeal, but he did not raise the issue in terms of his attorney's effectiveness.  (R. 134).  Further, Petitioner did not appeal the denial of this motion to the Ohio Supreme Court.

In April and May 2013, Petitioner filed motions to withdraw his plea. (R. 155, 182). In neither motion did Petitioner argue that counsel was ineffective based on counsel's alleged failure to notify him of his appeal rights. The May 2013 motion only argued that counsel was ineffective for failing to investigate the case and file pretrial motions. (R. 182-186). His appeal to the Ohio Supreme Court raised ineffective assistance of counsel claims, which included counsel's failure to compile an App. R. 9(c) statement, counsel's decision to waive oral argument and counsel's failure to challenge the prosecutors' failure to furnish a bill of particulars. (R. 272). But, again, these claims were not based on counsel's failure to discuss Petitioner's appeal rights. (R. 272). Then Petitioner sought to reopen his appeal in July 2014, raising several ineffective assistance claims, none of which involved counsel's failure to discuss appeal rights. (R. 324). The court of appeals denied the application, and Petitioner did not appeal to the Ohio Supreme Court.

In February 2015, Petitioner filed a motion for post-conviction relief and argued that counsel was ineffective for failing to inform him of his appeal rights. (R. 325). However, after the motion was denied, Petitioner appealed to the Eleventh District Court of Appeals, but he failed to raise the issue, instead arguing that the trial court erred by denying his motion without a hearing. (R. 364). While Petitioner noted counsel's alleged failure to notify him of his appeal rights, he did not frame this allegation in terms of an ineffective assistance of counsel claim. (R. 359-364). Petitioner appealed to the Ohio Supreme Court, arguing that the court of appeals erred by finding his petition untimely, that the court of appeals denial of his appeal amounted to a failure to appoint appellate counsel, and that petitioner acted with due diligence by trying to

obtain the sentencing transcripts.  However, Petitioner did not argue that counsel was ineffective by failing to advise him as to his appeal rights.

Given this state court procedural history, it is evident that Petitioner did not present to the state courts the ineffective assistance of counsel claim he now asserts.  That claim – that counsel was ineffective for failing to advise Petitioner of his appeal rights – was raised in February 2015 in the trial court on a post-conviction motion, but Petitioner did not pursue the issue at the Court of Appeals or the Ohio Supreme Court.  In order to have fairly presented this claim, Petitioner must have sought review and presented the claim at the highest court of the state, asserting both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  In this instance, Petitioner failed to do so.  As such, because the ineffective assistance of counsel claim was not properly raised in state court and no further state court remedies remain, the claim is procedurally defaulted.  *See Engle*, 456 U.S. at 125 n. 28.

Petitioner's default may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error."  *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable

probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320

F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

In this case, Petitioner presents no meaningful argument as to cause or prejudice.

Although Petitioner suggests that the reason he did not seek review of the alleged error because

he was unaware of his right to appeal, that does not explain why petitioner presented the issue of

counsel's ineffectiveness to the trial court, but not to the Court of Appeals or the Ohio Supreme

Court. In addition, assuming that Petitioner could demonstrate the existence of cause, he cannot

show prejudice. That is to say, Petitioner has not demonstrated that had his counsel notified him

of his appeal rights, that he would have appealed and that it is reasonably probable that the

appeal would have changed the outcome of his conviction and sentence. Petitioner pled guilty

pursuant to a plea agreement, but he describes no particular error with respect to those

proceedings that might have, with reasonable probability, resulted in a reversal on appeal. In

sum, Petitioner has failed to demonstrate either cause or prejudice for the procedural default.

Further, Petitioner fails to establish that the default should be excused because he is

actually innocent, such that excusing the default would prevent a "manifest injustice." *See*

*Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991).

### D. Petitioner's motion for summary judgment and motion for entry of default

It is recommended that Petitioner's motion for entry of default be denied. "[A] default

judgment ... is relief that is unavailable in habeas corpus proceedings." *Allen v. Perini*, 26 Ohio

Misc. 149, 424 F.2d 134, 138 (6th Cir.1970), superseded on other grounds by statute as stated in,

*Cobb v. Perini*, 832 F.2d 342 (6th Cir.1987); *Lemons v. O'Sullivan*, 54 F.3d 357, 364–65 (7th

Cir. 1995) ("Default judgment is an extreme sanction that is disfavored in habeas corpus

cases."); Gordon v. Duran, 895 F.2d 610, 612 (9th Cir. 1990) ("The failure to respond to claims raised in a petition for habeas corpus does not entitle the petitioner to a default judgment."); *Aziz v. Leferve*, 830 F.2d 184, 187 (11th Cir.1987) ("a default judgment is not contemplated in habeas cor pus cases"). In light of the foregoing, it is recommended that the motion for entry of default be denied.

In addition, it is recommended that Petitioner's motion for summary judgment also be denied, as the relief it seeks is duplicative of that sought by his Petition. As discussed at length above, the Petition is untimely, alternatively defaulted, or non-cognizable, and it should be denied.

### V. Conclusion

For the foregoing reasons, it is recommended that the Petition be DENIED; that Petitioner's motion for summary judgment be DENIED; and that his motion for entry of default be DENIED.


Date: <u>September 27, 2017</u>      <u>   s/Jonathan D. Greenberg    </u>
                                                     Jonathan D. Greenberg
                                                     United States Magistrate Judge


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.** ***See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981);** ***Thomas v. Arn*, 474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**